## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAMSIDDIN ABDUR-RAHEEM, | Civil Action No. 24-9054 (RK) (TJB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| | & ORDER |
| VICTORIA L. KUHN, et al., | |
| Defendants. | |

This matter has been opened to the Court by Plaintiff's filing of a civil action and an application to proceed *in forma pauperis* ("IFP application"). (ECF Nos. 1, 1-3.) At this time, the Court grants Plaintiff's IFP application (ECF No. 1-3) and directs the Clerk to file the Complaint.

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the pleading stage, the Court accepts the facts alleged in the pro se complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations, however, do not suffice.  *Iqbal*, 556 U.S. at 678.

Plaintiff alleges that between January and April 2024, he was expecting mail from at least 20 businesses to whom he had sent mail.  (Complaint at ¶ 18.)  On April 21, 2024, he wrote an informal grievance about the issue and received a response from the mailroom sergeant Michael Kostbar who informed him that the prison mail room does not accept mail from post office boxes.  (*Id.* at ¶ 19.)  Plaintiff filed a formal grievance on April 27, 2024, about not receiving mail from "WriteAPrisoner.com," and Kostbar responded that mail is not accepted from post office boxes.  (*Id.*)  Kostbar also responded to Plaintiff's final administrative appeal.  (*Id.* ¶ 20.)  According to Plaintiff, the new policy of refusing mail from post office boxes is not authorized by existing regulations and inmates have not been informed about it through the inmate handbook.  (*Id.* at ¶¶ 21-25.)  Inmates also do not receive notice that the mail has been returned to the sender.  (*Id.* at ¶ 26.)  Plaintiff alleges that Kostbar, who is the mailroom sergeant, is the prison official who returned his mail without notice.  (*Id.* at ¶ 29.)

Plaintiff has also sued a number of administrators in connection with the alleged mail policy.  He alleges that Victoria L. Kuhn, Commissioner of the NJDOC, Willie Bonds, Assistant Deputy Commissioner of the NJDOC, Erin Nardelli, Assistant Commissioner of the NJDOC, Donna Gies, Assistant Commissioner of the NJDOC, and Melinda Haley, Assistant Commissioner of the NJDOC are responsible for "implementing and enforcing" NJDOC policies.  (*See* Complaint at ¶¶ 4-8.)  Plaintiff further alleges that Kuhn, Bonds, Nardelli, Gies, and Haley are responsible for "enacting, authorizing, implementing and enforcing this new

unconstitutional policy prohibiting inmates from receiving mail from P.O. boxes without providing them or the sender any due process notice of and for these occurrences." (*Id.* at ¶ 30.)

According to the Complaint, Bruce Davis, Administrator of NJSP, Amy Emrich, Assistant Administrator of NJSP, and Derrick Bodtmann, Assistant Superintendent of the NJSP are also allegedly responsible for enforcing the mail policy at NJSP. (*Id.* at 10-12.) Plaintiff further contends that due to their roles within NJSP, Davis, Emrich, and Bodtmann were aware that Kostbar was rejecting his incoming mail sent from post office boxes. (*Id.* at 29.)

Plaintiff raises claims under 42 U.S.C. § 1983 and seeks damages and injunctive relief.[1] (*Id.* at ¶¶ 32-41.) To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The Court construes Plaintiff to assert a First Amendment and Fourteenth Amendment procedural due process claim against Kostbar, the mailroom sergeant who allegedly followed the mail policy by failing to deliver his mail from post office boxes and returning that mail without notifying him. "[S]tate prisoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (internal quotation marks and citation omitted).[2] The Supreme Court has also recognized a liberty interest in communicating by mail. *See Procunier v. Martinez*, 416 U.S. 396, 418 (1976);

---

[1] The Court construes Plaintiff to sue Defendants in their personal capacities for damages and in their official capacities for injunctive relief.

[2] Under *Turner v. Safley*, 482 U.S. 78, 89 (1987), however, a prison regulation that impinges on inmates constitutional rights is valid if it is reasonably related to legitimate penological interests. Here, the Court is unable to determine at the screening stage if the purported policy barring incoming mail from post office boxes without notice is reasonably related to legitimate penological interests.

*see also Vogt v. Wetzel*, 8 F.4th 182, 187 (3d Cir. 2021) (recognizing that prisoners "have a liberty interest in corresponding by mail" and finding that notification was required when rejecting prisoner's letter). At this early stage, the Court proceeds the First Amendment and Fourteenth Amendment due process claim against Kostbar for allegedly enforcing the mail policy and rejecting Plaintiff's mail sent from post office boxes without notice.[3]

Plaintiff's has also sued a number of supervisory officials. Notably, government entities and supervisors cannot be held responsible under § 1983 for the acts of their employees under the traditional principles of vicarious liability. *Iqbal*, 556 U.S. at 676; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved[.]" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quoting *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000)). Therefore, the administrator Defendants in this case may not be held vicariously responsible for Kostbar's actions under § 1983.

Individual policymakers, however, can be liable for their own actions in adopting and maintaining a practice, policy, or custom that causes constitutional violations with deliberate indifference to the consequences. *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724-25 (3d Cir. 1989); *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Thus, a person who has final policymaking authority may be held liable under § 1983 if that person establishes a policy that is unconstitutional and

---

[3] Prison officials are not liable under § 1983 merely because they responded inappropriately or failed to respond to prison grievances. *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006). Here, however, Plaintiff alleges that Kostbar had direct involvement in returning his mail without notice, thus satisfying the personal involvement requirement.

4

that injures the plaintiff. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Here, Plaintiff appears to allege that NJDOC administrators Kuhn, Bonds, Nardelli, Gies, and Haley instituted and/or implemented the policy at issue. He further alleges that NJSP administrators Davis, Emrich, and Bodtmann had knowledge and acquiesced in Kostbar's alleged wrongs. Although Plaintiff casts a wide net, the Court will permit the supervisory claims for damages to proceed against these Defendants in their personal capacities.

Plaintiff's claims for injunctive relief against Defendants in their official capacities survive as long as he pleads enough facts to show that these officials could provide him with the injunctive relief he seeks. *See, e.g., Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) ("[A] corrections department secretary and prison warden were proper defendants in a § 1983 case because '[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief.' ") At this early stage, the Court will also permit the claims for injunctive relief to proceed against Kuhn, Bonds, Nardelli, Gies, Haley, Davis, Emrich, Bodtmann, and Kostbar.

**IT IS, THEREFORE,** on this 10th day of September 2025,

5

**ORDERED** that Plaintiff's IFP application pending at ECF No. 1-3 is GRANTED; the complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Administrator at New Jersey State Prison; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing

fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that, as explained in this Memorandum Opinion & Order, the First Amendment and Fourteenth Amendment due process claims shall PROCEED against Michael Kostbar in his personal capacity; it is further

**ORDERED** that the supervisory liability claims shall PROCEED against Victoria L. Kuhn, Willie Bonds, Erin Nardelli, Donna Gies, Melinda Haley, Bruce Davis, Amy Emrich, and Derrick Bodtmann in their personal capacities; it is further

**ORDERED** that the claims for injunctive relief shall PROCEED against Victoria L. Kuhn, Willie Bonds, Erin Nardelli, Donna Gies, Melinda Haley, Bruce Davis, Amy Emrich, Derrick Bodtmann, and Michael Kostbar in their official capacities; it is further

**ORDERED** that, Pursuant to the Memorandum of Understanding[4] between the Court and the New Jersey Department of Corrections, the Court shall forward a copy of the complaint to the Department and seek a waiver of service for Defendants; a separate order detailing this process will follow; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk shall notify Plaintiff of the opportunity to apply in writing to the assigned judge for the appointment of pro bono counsel; and it is further

---

[4] The Memorandum of Understanding between all vicinages of the United States District Court for the District of New Jersey and the New Jersey Department of Corrections governs the process for obtaining waiver of service, where possible, for the Departments' current and former employees.

**ORDERED** that the Clerk of the Court shall send copies of this Memorandum Opinion & Order to Plaintiff via regular mail.

ROBERT KIRSCH
United States District Judge